UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Rock Holdings, Inc., *et al.*,

Plaintiffs,

v. Case No. 09-11599

Certain Underwriters at Lloyd's London, *et al.*, Honorable Sean F. Cox

Defendants.
_________________________________________/

**OPINION & ORDER DENYING DEFENDANTS' MOTION TO DISMISS STATESIDE UNDERWRITING AGENCY AND TO STRIKE PLAINTIFFS' BAD FAITH ALLEGATIONS**

This insurance dispute is currently before the Court on Defendants' "Motion to Dismiss Stateside Underwriting Agency and to Strike Plaintiffs' Bad Faith Allegations." The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons below, the Court shall: 1) DENY Defendants' request to dismiss Stateside from this action; and 2) DENY Defendant's motion to strike allegations concerning bad faith from Plaintiffs' complaint.

BACKGROUND

Plaintiffs Rock Holdings, Inc. ("Rock"), Quicken Loans, Inc. ("Quicken"), and Title Source, Inc. ("Title Source")(collectively "Plaintiffs") filed suit against Defendants "Certain Underwriters at Lloyd's, London," and Stateside Underwriting Agency, Inc. ("Stateside")

(collectively "Defendants") in state court. Defendants removed the action to this Court on April 28, 2009, on the basis of diversity jurisdiction.

This case involves two insurance contracts between the parties: 1) a special mortgage banker bond insurance policy ("the Mortgage Bankers Bond") (*See* Compl. at ¶ 7; Answer at ¶ 7); and 2) an Excess Mortgage Bankers Bond ("the Excess Mortgage Bankers Blanket Bond")(*See* Compl. at ¶ 16; Answer at ¶ 16).

Plaintiffs allege that Certain Underwriters at Lloyd's, London issued the bonds to Plaintiffs "by and through its affiliate, Stateside." (See Compl. at ¶ 7).

Plaintiffs claim that in May, 2007, they learned that a certain employee of Quicken Loans, Daniel Pack ("Pack"), had engaged in various acts of dishonesty covered by the terms of the Policy. (Compl. at ¶ 17). Plaintiffs allege that they terminated Pack and filed a civil action against him to recover monetary damages for their losses. (Compl. at ¶¶ 19-21). Plaintiffs allege that they provided Defendants with written notice of their claim on July 13, 2007, under Insuring Clause 1 of the Policy resulting from the unlawful and improper acts of Pack. (Compl. at ¶ 23). Plaintiffs allege that Defendants wrongfully denied the claim. (Compl. at ¶ 33). They further allege that, "without basis or justification, Defendants purported to rescind the Policy on a contrived basis as a ruse to try to support their frivolous Denial" of their claim. (*Id*.).

Plaintiffs' assert the following two counts against Defendants in this action: "Breach of Insurance Contract" (Count I); and "Declaratory Judgment" (Count II). Defendant Certain Underwriters at Lloyd's, London then asserted a "Counterclaim for Rescission."

Defendants filed the instant Motion seeking to dismiss Stateside from this action, and seeking to strike allegations of bad faith in Plaintiffs' complaint, on May 4, 2009.

ANALYSIS

In their motion, Defendants present two issues: 1) whether the claims against Stateside should be dismissed; and 2) whether the Court should strike Plaintiffs' allegations of bad faith (in paragraphs 35, 36, 40, 45 & 46 of the Complaint). Each issue is addressed below.

A. Should Stateside Be Dismissed From This Action?

Defendants contend that there is "no dispute" about who issued the Bonds at issue in this case. "Underwriters admit that they issued the Bonds, but deny that the Insureds' claim is covered because the Insureds violated the terms of the Bonds and made material misrepresentations" during underwriting. (Pls.' Br. at 1). In support of their assertion that there is no dispute about who issued the Bonds, Defendants direct the Court to the "Lloyd's Certificate" for the Bonds themselves. That Certificate, however, simply states that "This Insurance is effected with *Certain Underwriters at Lloyd's, London* (not incorporated)," and further states that "This Certificate is issued in accordance with the limited authorization granted to the Correspondent by *certain Underwriters at Lloyd's, London whose names and the proportions underwritten by them can be ascertained* from the office of said Correspondent . . ." (Ex. A to Defs.' Br.)(emphasis added).

Notably, Plaintiffs sued "Certain Underwriters at Lloyd's, London" and Stateside. In their Answer and Counterclaim, Defendants state that Plaintiffs "improperly sued" the Lloyds defendant "as 'Certain Underwriters at Lloyd's, London" whereas it should have been named as "Certain Underwriters at Lloyd's, London that Subscribe Certificate Number SUA 200978 and Certificate Number P01508600."

In the pending motion, Defendants use "Underwriters" to refer to "Certain Underwriters at Lloyd's, London that Subscribe Certificate Number SUA 200978 and Certificate Number

P01508600."

Defendants contend that although Plaintiffs "seek recovery under Bonds that "Underwriters" admits that they issued, the Insureds sued Underwriters' correspondent, Stateside. Defendants state that "[i]t appears that Insureds seek recovery from Stateside because Stateside acted as Underwriters' correspondent," but assert that this Court already "rejected that theory" in *Mickam v. Joseph Louis Palace*, 849 F.Supp. 516 (E.D. Mich. 1993).

In *Mickam*, the plaintiff sought to assert a breach of contract claim against the agent for a title insurance company. The court granted *summary judgment* (i.e., not a motion to dismiss brought prior to any discovery) in favor of the agent stating:

> Plaintiffs claim that Seaver Title is liable to them under the insurance policy. This claim is meritless, because Seaver Title is not the insurer under the policy; Sever Title merely acted as an agent for Security Union. While an agent is liable for his own torts, an agent is not liable for the contracts it makes on behalf of a <u>disclosed</u> principle. *Hall v. Encyclopedia Britannica, Inc*., 325 Mich. 35, 37 N.W.2d 702 (1949); *Huizenga v. Withey Sheppard Assoc*., 15 Mich.App. 628, 167 N.W.2d 120 (1969).
>
> Accordingly, Sever's motion for summary judgment on Plaintiff's claim for breach of contract is granted . . .

*Mickam*, *supra*, at 520-21 (emphasis added).

In responding to the Motion to Dismiss, Plaintiffs indicate that it is far from clear who is liable for claims made under the Bonds. They assert that Lloyd's issues insurance policies "through a complicated and convoluted system" and refer the Court to *Certain Interested Underwriters at Lloyd's London, England v. Layne*, 26 F.3d 39 (6th Cir. 1994). (Pls.' Br. at 8). In that case, the Sixth Circuit discussed the complexities of a policy by Lloyds "– that venerable institution shrouded in the corporate vagaries of British law." *Id*. at 41. The court explained that "[t]he corporation Lloyd's of London is not actually in the insurance business. Rather, the

corporation provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyds." *Id*. "The business of insuring risk at Lloyd's is carried on by a group of more than four hundred syndicates. These syndicates are not incorporated, and they are comprised of some 30,000 member-investors, sometimes called 'underwriters' or 'names,' who hope to share in any profit the syndicate might make." *Id*. at 42. "A particular syndicate may have a few hundred or many thousand investors."

Plaintiffs state that the motion to dismiss Stateside should be denied because "Defendants have not shown that Stateside is not a member of syndicate of underwriters." (Pls.' Resp. Br. at 8). Plaintiffs note that "[i]n the Underwriters' counterclaim, the Underwriters identify the syndicates underwriting the Bond Policy by name, but fail to identify the individual members of such syndicates, and further fail to even affirm that Stateside is not a member of any such syndicate." (Pls.' Br. at 9). Plaintiffs note that "in his Affidavit supporting Defendants' Notice of Removal to this Court, Defendants' counsel, Scott L. Schmookler, can not even definitively confirm that the identities of syndicates which comprise the Underwriters are accurate." (*Id*.). Rather, he "indicates only that, '[a]ccording to our investigation and research, Underwriters are comprised of' the listed syndicates." (Pls.' Br. at 10).

Plaintiffs state that "neither Mr. Schmookler nor any representative of Lloyd's or Stateside has affirmatively asserted, under oath, that Stateside is not a member of any syndicate which is part of the Underwriters." (*Id*.). Plaintiffs contend that "[b]ecause Stateside may very well be a member of one of the syndicates responsible for the Bond Policy," there is no basis to dismiss Stateside at this time, prior to any discovery in this action.

Plaintiffs further assert that the cases cited by Defendants do not support their position

because those cases "merely affirmed the general rule that an agent for a disclosed principal does not become liable on the contract. However, in *Riddle*, *Hall* and *Mickam*, unlike the case at bar, the full identity of the principal was clear and never in dispute at all. *Id.* In contrast, in the case at bar, the identities of each syndicate (i.e., the principals) and their respective members was not disclosed to Plaintiffs during the time period that Stateside has bound, renewed and serviced the Bond Policy, and in fact still remains vague and uncertain." (Pls.' Br. at 10-11).

The Court agrees with Plaintiffs that, at this juncture, the Motion to Dismiss Stateside should be DENIED.

B. Should The Court Strike Plaintiffs' Allegations Of Bad Faith?

Defendants also ask the Court to strike allegations of bad faith in paragraphs 35, 36, 40, 45 and 46 of Plaintiffs' complaint, pursuant to FED. R. CIV. P. 12(f)

Rule 12(f) provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

The Sixth Circuit has stated that "[p]artly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice. The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

District courts within this circuit have concluded that a district court should not strike a matter "unless the court can confidently conclude that the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation and

prejudicial to the objecting party." *Aqua Bay Concepts, Inc. v. Grosse Pointe Board of Realtors*, 1992 WL 350275 at * 2 (E.D. Mich. 1992); *see also Agfa Photo USA Corp. v Parham*, 2007 WL 776503 at *2-3 (E.D. Tenn. 2007); *Bond v. Douglas Autotech Corp*., 2005 WL 3359327 (W.D. Ky. 2005).

Defendants contend that the allegations concerning bad faith in Plaintiffs' complaint are irrelevant to the claims at issue in this case and are included to "disparage Underwriters" and give the illusion that Plaintiffs can pursue a claim for breach of an implied duty of good faith and fair dealing when it is well-established that they cannot do so under Michigan law.

Defendants contend that other federal courts have, under Rule 12(f), stricken analogous allegations of bad faith from claims for breach of contract and declaratory judgment. Defendants rely on the unpublished case *Tiscornia v. Travelers Corp*., 1996 WL 33170228 (W.D. Mich. 1996). Defendants explain their position as follows:

> *Tiscornia* addressed the precise issue presented by this motion. In that case, the policyholder sued for breach of contract, and within that claim, pled that the insurer breached an implied duty of good faith. Granting a motion to strike, the court struck the allegations of bad faith because "any reference in the complaint to the defendants' bad faith is superfluous" and thus, the court held that any "such references will be stricken." *Id.*, 1996 WL 33170228 at *10.
>
> The Insureds' sole remedy against Underwriters is a claim for breach of contract and, if they prevail, they are entitled to recover contractual damages. Regardless of how it is pled, Insureds cannot pursue a claim for "bad faith" (whether pled directly or included in a breach of contract claim). Accordingly, Insureds' "bad faith" allegations . . . should be stricken with prejudice.

(Defs.' Br. at 6).

In response, Plaintiffs concede that they have not asserted a separate claim for breach of the implied covenant of good faith and fair dealing. They also acknowledges that "Michigan law does not recognize a separate action for breach of the implied covenant of good faith and fair

dealing." (Pls.' Resp. Br. at 13). Plaintiffs assert, however, that "Michigan law does recognize that a covenant of good faith and fair dealing is implicit in every contract governed by Michigan law, and a claim for breach of the implied covenant of good faith and fair dealing can be maintained where, as here, it is accompanied by a claim for breach of an express term of the contract." (*Id.*)(emphasis in original). Plaintiffs rely on the following cases for that proposition: *Paradata Computer Networks, Inc. v. Telebit Corp*., 830 F.Supp. 1001 (E.D. Mich. 1993); and *McLiechey v. Bristol West Ins. Co.*, 408 F.Supp.2d 516 (W.D. Mich. 2006).

In *Paradata*, the court noted that "Michigan courts will recognize an action for breach of an implied covenant of good faith and fair dealing where 'a party to a contract makes the manner of its performance a matter of its own discretion.' *Burkhardt v. City National Bank of Detroit*, 57 Mich.App. 649, 652, 226 N.W.2d 678, 680 (1975)." *Paradata*, 830 F.Supp. at 1005. Plaintiffs assert that:

> Here, the Bond Policy grants decision-making discretion to the Underwriters as to whether they accept or reject a claim. Therefore, there is no question that, in conjunction with Plaintiffs' claim for breach of certain express terms of the Bond Policy, Plaintiffs may also maintain in their breach of contract claim that Defendants have breached the implied covenant of good faith and fair dealing imputed into the contract with respect to their improper Denial of the Claim. Plaintiffs' allegations of 'bad faith' are directly relevant to Defendants' failure to abide by the implied covenant of good faith and fair dealing which is, by Michigan law, incorporated into the Bond Policy.

(Pls.' Resp. Br. at 14-15).

Plaintiffs further assert that their bad faith allegations should not be stricken because they are material to Plaintiffs' claims for specific performance and declaratory relief. They note that they "have brought equitable claims for specific performance and declaratory relief wherein Plaintiffs request that this Court: (1) prohibit Defendants from rescinding the Policy, as

Defendants have already sought to do; and (2) order that Defendants specifically perform the Policy." (Pls.' Resp. Br. at 15). Plaintiffs contend that "Defendants have not cited any case, because there is none, which suggests or implies that allegations of bad faith conduct are not relevant to an equitable request for specific performance and/or declaratory relief based, in part, upon such alleged bad faith conduct." (*Id*.). Citing *Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.*, 73 F.2d 653, 654-55 (6th Cir. 1986), Plaintiffs note that the Sixth Circuit "has held that 'bad faith is never indispensable as an element' in cases in equity involving rescission."

Plaintiff further state that "[i]t is beyond dispute that this Court, in the exercise of its equitable power, would be free to consider the conduct of the parties, including the alleged bad faith conduct of Defendants. Indeed, in the Underwriters' Counterclaim, Underwriters seek to invoke the equitable power of this Court. It is well established that 'courts will not allow a party with unclean hands to prevail on an equitable argument.' *See, e.g., Fryman v. Federal Crop Ins. Corp*., 936 F.2d 244, 251 (6th Cir. 1991)." (Pls.' Resp. Br. at 17 n.5).

With respect to their request to strike bad faith allegations, Defendants' Reply Brief[1] provides no analysis as to why Plaintiff's discretionary argument fails as a matter of law in this case. Rather, they simply assert that "none of their cited authority involves a dispute over insurance proceeds where such allegations were coupled with improper allegations of bad faith." (Reply at 3). Defendants continue to rely on *Tiscornia* as authority for their request. In that

[1]In their Reply, Defendants ask the Court to disregard Plaintiffs' Response Brief to the motion because it was filed two days late. This Court shall deny that request and address the merits of the motion.

case, however, it does not appear that the Plaintiff made, or the Court considered, the discretionary argument that Plaintiffs have asserted here.

Defendants's Reply Brief does not address Plaintiffs' arguments regarding bad faith allegations being relevant to equitable claims and defenses, other than to assert that *Tiscornia* also involved relief sounding in equity.

Finally, Defendants have not established how they would be prejudiced if the challenged allegations are allowed to remain in the complaint at this juncture.

Given the stringent standard that courts within this circuit have applied to motions to strike portions of pleadings, Defendants' failure to establish that Plaintiffs' discretionary argument fails as a matter of law, Defendants' failure to establish prejudice resulting from the bad faith allegations, and failure to establish that bad faith allegations cannot be considered in terms of equitable claims and defenses, the Court shall DENY the request to strike bad faith allegations in Plaintiffs' complaint. Defendants have not established that the bad faith allegations in their complaint have "no possible relation to the controversy."

CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendants' "Motion to Dismiss Stateside Underwriting Agency and to Strike Plaintiffs' Bad Faith Allegations" is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: August 11, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 11, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager